In re D.F.R.

No. 04–96–00986–CV.

Court of Appeals of Texas, San Antonio.

April 9, 1997.

---

Appeal from the 175th Judicial District Court of Bexar County, Texas. Trial Court No. 96–CR–0498. Honorable Mary Roman, Judge Presiding.[1]

Frederick R. Zlotucha, Bert G. Miller, Law Office of Frederick R. Zlotucha, San Antonio, for appellant.

Angela Moore, Assistant Criminal District Attorney, San Antonio, for appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

ANGELINI, Justice.

This is an accelerated appeal of an order extending a court-ordered mental health commitment for out-patient treatment for appellant, who had previously been found not guilty by reason of insanity of aggravated robbery. In two points of error, appellant asserts: (1) that the trial court erred in denying him a hearing and a jury trial on the issue of whether his present mental condition meets the criteria for involuntary commitment and (2) that the evidence is legally and factually insufficient to support the commitment order. The state contends that the trial court is authorized under Section 46.03(4) of the Texas Code of Criminal Procedure to order out-patient supervision for a period of 90 days without a jury trial. The State further contends the evidence presented to the trial court is sufficient to support the commitment order. We reverse the trial court's order extending commitment and order appellant released from further supervision by the court.

**Factual and Procedural Background**

On July 11, 1996, the Honorable James E. Barlow found appellant not guilty by reason of insanity on a charge of aggravated robbery. The Judgment of Acquittal by Reason of Insanity entered by Judge Barlow ordered that appellant be committed to the maximum security unit of Vernon State Hospital for 30 days under Article 46.03, Section 4(d)(1) of the Texas Code of Criminal Procedure. The judgment further required that an examination of appellant's present mental condition be conducted and a report filed with the court on or before August 10, 1996, so that an appropriate hearing could be held on the issue of the need for extended involuntary commitment at that time.

The matter of an extension of appellant's involuntary commitment was referred to Criminal Law Magistrate Carruthers. At a hearing set on August 9, 1996, the magis-

---

1. This matter was referred to Criminal Law Magistrate Andrew Carruthers for hearing and rec- ommendation.

trate announced that the parties agreed "a full-blown hearing [should be] conducted on the appropriateness of court-ordered commitment to outpatient status." At that point, appellant's counsel stated appellant was not waiving his right to a jury trial on the issue of involuntary commitment. The magistrate agreed appellant was entitled to a jury trial and granted appellant a jury setting. Appellant's counsel also objected to the medical reports that were on file with the court. Specifically, appellant objected to the reports of Dr. Anthony Hempel of Vernon State Hospital and of Dr. John Sparks as hearsay. Appellant also objected that Dr. Sparks' examination of appellant was conducted without notice to appellant's counsel, in violation of appellant's constitutional rights. In response to appellant's attorney's objections, the magistrate ordered another independent psychiatric evaluation by Dr. Sparks to be conducted with counsel present. He also released appellant from the state hospital on a personal recognizance bond. No evidence was presented. Following the August 9, 1996 hearing, for reasons not apparent from the record, Dr. Sparks never received an order from the court to examine appellant nor did Dr. Sparks conduct such an examination.

Magistrate Carruthers held a second hearing in this same matter on November 22, 1996. On the morning of the hearing, appellant's counsel filed his objections to the commitment proceeding and motion to dismiss. Specifically, appellant objected to the use of the psychiatric reports submitted before the August 9, 1996 hearing and to the fact that Dr. Sparks had not conducted a new evaluation with counsel present. Further, appellant objected that there was no new or competent evidence before the court in compliance with Article 46.03 and that no psychiatric evaluation within 30 days of the hearing had been conducted. Without hearing any testimony, the magistrate overruled appellant's objections and announced his intention to order that appellant be committed on an out-patient basis without according him a jury trial.

Although appellant was denied a jury trial, the magistrate did permit appellant to put on evidence, apparently as a bill of exceptions. Appellant called Dr. Robert Jimenez who testified the appellant was not mentally ill at the present time. The State then called Dr. John Sparks to testify. Dr. Sparks had conducted a total of three evaluations of appellant, the most recent of which occurred on August 8, 1996, apparently in anticipation of the August 9, 1996 hearing.[2] Dr. Sparks signed a physician's certificate as a result of the August 8, 1996 examination, stating he had evaluated appellant. The August 8, 1996 examination was the one appellant's counsel had objected to as having been conducted without notice to appellant's counsel. In his live testimony, Dr. Sparks stated it was his opinion that appellant is mentally ill at the present time.

After allowing the bill of exceptions testimony, the magistrate found that appellant "meets the criteria for involuntary commitment; however, such treatment and care can be provided on an out-patient basis." The magistrate further ordered that appellant continue treatment under Dr. Jimenez's supervision and that the Center for Health Care Services supervise the out-patient care.[3] Also, the magistrate stated he would review the matter to determine further need for court-ordered treatment within 90 days.

The magistrate's findings of fact and conclusions of law state that "medical testimony was offered" by Dr. Jimenez and Dr. Sparks and that "Defendant never submitted to a mental status examination by Dr. John C. Sparks as ordered by the Criminal Law Magistrate on August 8, 1996." Thus, although the magistrate allowed the medical testimony at the hearing, apparently as a bill of exceptions, the magistrate nevertheless appears to have based his finding of present

---

2. Two pre-trial psychiatric evaluations were conducted by Dr. John Sparks, one to determine whether appellant was competent to stand trial, and the second focused on his insanity defense. Neither of these were conducted within 30 days of an Article 46.03 hearing.

3. The district judge stayed this order pending disposition of the appeal.

mental illness on that testimony and the reports prepared by Dr. Hempel which were filed with the court on August 7, 1997.

### An Article 46.03 Hearing

When a person has been acquitted of criminal charges by reason of insanity, the code of criminal procedure provides for an automatic commitment at a maximum security facility for thirty days for purposes of psychiatric evaluation. *See* TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(1) (Vernon Supp.1997). The trial court retains jurisdiction over the acquitted person. *Id.*

The trial court must conduct a hearing within 30 days of the acquittal order to determine if the person acquitted by reason of insanity is presently mentally ill or mentally retarded and meets the criteria for involuntary commitment as provided in the Texas Mental Health Code. *See id.* at (d)(2). A hearing conducted under article 46.03 is a civil proceeding and is to be conducted by the trial court in the same manner as a hearing on an application for involuntary commitment under the mental health code. *Id.* at 4(d)(2).

The criteria for involuntary commitment as set forth in the mental health code provides that a judge or jury may not order mental health services unless the factfinder finds from clear and convincing evidence that: (1) the proposed patient is mentally ill and (2) as a result of that illness is (A) likely to cause serious harm to himself, (B) likely to cause serious harm to others, or (C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 1992). These criteria apply to both in-patient commitments and orders for mental health treatment on an out-patient basis. TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(3) and (4).

The mental health code further provides that the court may not conduct the hearing on the issue of court-ordered mental health services unless there are on file with the court at least two certificates of medical examination for mental illness completed by different physicians. TEX. HEALTH & SAFETY CODE ANN., § 574.009(a); *see In re J.J.*, 900 S.W.2d 353, 355 (Tex.App.—Texarkana 1995, no writ) (single certificate of medical exam for mental illness could not support temporary court-ordered mental health treatment). One of the physicians must be a psychiatrist, if one is available in the county, and each physician must have examined the proposed patient during the past 30 days. TEX. HEALTH & SAFETY CODE ANN. § 574.009(a). If, on the day of the 30–day hearing the state has failed to cause at least two certificates to be filed, the trial court must dismiss the application for commitment and order the immediate release of the proposed patient. *Id.*

■■■ The mental health code also contemplates live testimony at the hearing and that the proposed patient be afforded an opportunity to cross-examine witnesses. If the proposed patient waives the right to cross-examine witnesses, the court may admit into evidence the certificates of medical examination for mental illness, which would then constitute competent medical or psychiatric testimony, and the court may make its findings solely from the certificates. *Id.* at § 574.034(d). The trial court is not, however, authorized to unilaterally determine whether it will or will not hear live testimony in the proceeding. *See C.V. v. State*, 616 S.W.2d 441, 443 (Tex.App.—Houston [14th Dist.] 1981, no writ) (where proposed patient opposes court-ordered treatment, physician certificates are not sufficient proof). Where the proposed patient does not waive, in writing, the right to cross-examine witnesses, the court shall proceed to hear testimony. The testimony must include competent medical or psychiatric testimony. *See* TEX. CONST. art. I, § 15–a (Vernon 1984); *C.V. v. State*, 616 S.W.2d at 443.

■■■ In a hearing on an application for court-ordered mental health services, the burden of proof is on the state to prove each element of the applicable criteria by clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.031(g); *In re J.S.C.*, 812 S.W.2d 92, 94 (Tex.App.—San

Antonio 1991, no writ); *Harris v. State*, 615 S.W.2d 330, 331 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). The clear and convincing standard falls somewhere between the preponderance standard of civil cases and the beyond all reasonable doubt standard of criminal cases. *See State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979). The proof must produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* To meet this standard of proof for court-ordered mental health services, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood that the person would cause serious harm to himself or others or confirm the person's distress and deterioration of ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(c); *In re J.S.C.*, 812 S.W.2d at 95–96.

If, at the conclusion of the hearing, the court determines the proposed patient is mentally ill and meets the criteria for court-ordered mental health services under the mental health code, the court shall order commitment for up to 90 days. TEX.CODE CRIM. PROC. art. 46.03, § 4(d)(3). The court may order a regimen of treatment on an outpatient basis. *Id.* at § 4(d)(3) and (4). If the court finds the proposed patient is not mentally ill and does not meet the criteria for commitment, the court shall order the person's immediate release. *Id.* at § 4(d)(3); TEX. HEALTH & SAFETY CODE ANN. § 574.033(b).

The mental health code provides that a proposed patient is entitled to a trial by jury on the issue of court-ordered mental health services, if requested. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.032 (Vernon 1992); *accord Ex parte Meade*, 550 S.W.2d 679, 682 (Tex.Crim.App.1977) (petitioner entitled to prompt jury trial to determine whether he be civilly committed or otherwise supervised or discharged); *Lopez v. State*, 775 S.W.2d 857, 860 (Tex.App.—San Antonio 1989, no pet.) (right to trial by jury fundamental to determination of need for court-ordered extended mental health services). Once the proposed patient requests a jury, it cannot be denied unless he waives it under the conditions provided by the statute. *See* § 574.032; *M.A.V., Jr. v. Webb County Court at Law*, 842 S.W.2d 739, 743–44 (Tex.App.—San Antonio 1992, writ denied).

### Denial of Hearing and Jury Trial

Appellant contends he was denied a hearing and a jury trial as required by article 46.03 of the Texas Code of Criminal Procedure and the Texas Mental Health Code. We agree that the trial court did not conduct a proper hearing and further that the State failed to meet its burden of proof under the statutes.

The State asserts that the court was not required to followed the statutory procedures for commitment because the court was merely ordering outpatient treatment rather than involuntary commitment. The State urges the court to find that outpatient treatment does not equate with involuntary commitment. The state, however, has cited no compelling authority for this proposition. In support of its argument, the State cites the case of *Lopez v. State*, 775 S.W.2d 857 (Tex. App.—San Antonio, 1989, no writ), which holds that a proposed patient is entitled to a jury trial before he is involuntarily committed. That case, however, makes no distinction between inpatient and outpatient mental health services. The State also cites to section 574.037 of the mental health code as authority for its argument that procedural safeguards need not be afforded where outpatient services are ordered. That section, however, does little more than require the court to identify who is responsible for rendering outpatient services when outpatient services are ordered. That section does not provide or even imply that the court can order outpatient supervision without finding that the proposed patient is mentally ill and meets the criteria set forth in section 574.034 of the mental health code.

We find that under article 46.03(d) and the provisions of the mental health code relating to holding a hearing for court-ordered mental health services, appellant was entitled to all procedural safeguards under the statutes regardless of whether the court ordered inpatient or outpatient services. Appellant was

entitled to a hearing within 30 days of the acquittal order for a determination of whether he was mentally ill and whether he met the criteria for involuntary commitment. Appellant was entitled to a jury trial unless he waived it, which he did not. Appellant was entitled to cross-examine witnesses. Appellant was entitled to have the State meet its burden of proving by clear and convincing evidence that he was mentally ill and that he met the criteria for involuntary commitment. Appellant was entitled to have the state provide expert testimony of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood that he would cause serious harm to himself or others or confirm his distress and deterioration of ability to function before being ordered to submit to court-ordered outpatient mental health services.

■ The record shows that appellant was not afforded these mandatory statutory safeguards. The August 9, 1996 hearing was not a hearing at all. No evidence was heard, the medical certificates that were on file were not considered, and the court made no findings. The court merely put the hearing off until a later date. The November 22, 1996 hearing was also not a true hearing in that the magistrate expressed his intention to order outpatient treatment and then allowed the parties to proceed with testimony, apparently as a bill of exceptions. There is some indication the court relied, nonetheless, on the testimony because he referred to it in his findings of fact and conclusions of law. But the testimony that was heard improperly placed the burden of proof on the appellant. The appellant went forward with his witness, Dr. Jimenez, who testified that appellant was not mentally ill and did not meet the criteria for commitment. The State then offered testimony from Dr. Sparks, whose opinion was based on examinations of the appellant that took place months before the November 22 hearing. As such, Dr. Sparks' testimony was stale because his examinations took place more than 30 days before the hearing. Because appellant was not afforded the procedural safeguards required by statute, appellant is entitled to immediate release. Appellant's point of error number two is granted.

## Sufficiency of the Evidence

■ At the November 22, 1996 hearing, when the magistrate expressed his intention to order outpatient treatment without holding a hearing, appellant's counsel requested the opportunity to put on testimony as a bill of exceptions. As stated previously, it is unclear from the record whether the court considered the testimony as a bill of exceptions or whether the court considered the testimony in concluding appellant should submit to outpatient mental health services. On the one hand, the magistrate stated he intended to order outpatient treatment before he even heard any testimony. On the other hand, after hearing the testimony, the court referred to it in his findings of fact and conclusions of law. If the testimony did form some basis for the magistrate's order, we conclude the evidence was legally insufficient to support a finding of mental illness or that appellant met the criteria for mental services under the mental health code.

First of all, as stated above, the burden of proof was improperly placed on appellant in that he was required to go forward first with his witness, Dr. Jimenez. Dr. Jimenez testified that appellant was not mentally ill at that point. Dr. Jimenez further testified that appellant was not a danger to himself or others. And Dr. Jimenez stated he had spoken with the state psychiatrist who concurred that appellant was not currently mentally ill and that he was not a danger to himself or others. It was Dr. Jimenez's opinion that appellant did not need any psychiatric care or supervision at the time of the hearing.

After hearing Dr. Jimenez's testimony, the magistrate then allowed the state to put on proof. The state called Dr. John Sparks who had examined the appellant on October 16, 1995, in March of 1996, and on August 8, 1996. Dr. Sparks' testimony was not competent since he had not examined appellant within 30 days of the hearing. Dr. Sparks testified that at the time of the examinations, appellant was mentally ill. Dr. Sparks believed appellant was potentially dangerous and that appellant could be a danger if not on

medication. Dr. Sparks expressed the opinion that appellant needed outpatient supervision. Dr. Sparks also stated, however, that he had no opinion as to appellant's present mental state since he had not examined him in at least 60 days. And, Dr. Sparks testified that he would defer to Dr. Jimenez's opinion relative to appellant's present mental condition.

Even viewing the evidence in the light most favorable to the magistrate's findings, the evidence was legally insufficient to sustain the commitment order. Appellant's point of error number one is granted. Accordingly, the November 22, 1996 Order of Extended Commitment is reversed and the appellant is ordered released from further supervision.