Nathan Dale CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–01–00741–CV, 14–01–00746–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 11, 2002.

Publication Ordered April 12, 2004.

 

James M, Leitner, Houston, for appellant.

Kevin P. Keating, Houston, for appellee.

Panel consists of Justices YATES, EDELMAN, and EVA M. GUZMAN (EDELMAN, J., dissenting).

## MAJORITY OPINION

EVA M. GUZMAN, Justice.

Nathan Dale Campbell appeals from a court order in a civil proceeding extending his involuntary commitment for inpatient mental health services for another year. In five issues, he contends: (1) the evidence is legally insufficient to support the verdict; (2) the trial court erred in overruling his objections to the jury charge; and (3) the court erred in denying his motion for a continuance. In a cross-issue, the State argues that no rational jury could have failed to find Campbell was likely to cause serious harm to others. We reverse and remand for a new trial.

## I. Background

On July 16, 1996, Campbell attacked his girlfriend with a knife causing severe injury to her face and eyesight. He was arrested and charged with aggravated kidnapping and aggravated assault. After several doctors examined Campbell and concluded he was insane at the time of the assault, the trial court found him not guilty by reason of insanity. Because the court also found Campbell had inflicted serious bodily injury on another person, he was automatically committed to a State mental health facility under article 46.03 of the Texas Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 46.03 (Vernon 1979 & Supp.2002). Pursuant to statutory authority, the court has annually

reviewed Campbell's case and renewed the order for extended inpatient mental health services. *See* Tex. Health & Safety Code Ann. § 574.066 (Vernon 1992). These proceedings are civil, not criminal in nature. *In re GBR,* 953 S.W.2d 391, 395 (Tex.App.-El Paso 1997, no writ). This is the third time Campbell has appealed his recommitment. *See Campbell v. State,* 68 S.W.3d 747 (Tex.App.-Houston [14th Dist.], 2001, pet. granted, 2002); *Campbell v. State,* Nos. 14–99–00620–CV, 14–99–00621–CV, 2000 WL 675142 (Tex.App.-Houston [14th Dist.] May 25, 2000, pet. denied) (not designated for publication).

In the present action, the jury found Campbell mentally ill and that his condition was expected to continue for more than ninety days. The jury further found that, if not treated, Campbell would continue to suffer severe and abnormal mental, emotional, or physical distress, as well as a deterioration of his ability to function independently. They also found he was unable to make a rational decision regarding treatment. However, the jury refused to find that Campbell was likely to cause serious harm to himself or others. Based on the jury's findings, the trial court ordered Campbell involuntarily committed for another year.

## II. Legal Sufficiency

### A. Standard of Review

■ Campbell contends the evidence is legally insufficient to support the verdict. He makes no specific claims as to perceived deficiencies in the State's evidence, so we will undertake a general examination of the sufficiency of the evidence.[1] In

---

1. Although Campbell has failed to analyze, discuss, or provide proper citation to the record, we address this point of error in the interest of justice. *See generally* Tex.R.App. P. 38.1(h) (brief must contain clear and concise argument with appropriate citations to record); *Rendleman v. Clarke,* 909 S.W.2d 56, 59 (Tex.App.-Houston [14th Dist.] 1995, writ. dism. as moot) (appellant bears burden of supporting sufficiency point with argument,

reviewing a no evidence complaint concerning a mental health commitment, we must review the evidence favorable to the court's judgment to see if there is more than a scintilla of evidence to support the commitment. *See Johnstone v. State,* 961 S.W.2d 385, 388 (Tex.App.-Houston [1st Dist.] 1997, no writ). We consider only the evidence and inferences tending to support the fact finding, and we disregard all contrary evidence and inferences. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex. 1996). If more than a scintilla of evidence supports the finding, then the no evidence challenge fails. *See Niswanger v. State,* 875 S.W.2d 796, 798 (Tex.App.-Waco 1994, no writ) (citing *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993)).[2]

A court may not renew an order for inpatient mental health services unless it finds the patient meets the criteria prescribed in section 574.035(a) of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.066(f) (Vernon 1992). Under section 574.035(a), the court may order inpatient mental health services only if the trier of fact finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

 (A) is likely to cause serious harm to himself;

 (B) is likely to cause serious harm to others; or

(C) is:

 (i) suffering severe and abnormal mental, emotional, or physical distress;

 (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

 (iii) unable to make a rational and informed decision as to whether or not to submit to treatment;

(3) the proposed patient's condition is expected to continue for more than 90 days; and

(4) the proposed patient has received court-ordered inpatient mental health services under this subtitle or under Section 5, Article 46.02, Code of Criminal Procedure, for at least 60 consecutive days during the preceding 12 months.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a) (Vernon Supp.2002). The proof must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either (1) the likelihood of serious harm to the proposed patient or others, or (2) the proposed patient's distress and the deterioration of his or her ability to function. *Id.* § 574.035(e).

---

authority, and citation to record). We address this issue first because, if sustained, it would require us to reverse and render, not remand, as would Campbell's other issues. *See Bradley's Elec., Inc. v. Cigna Lloyds Ins. Co.,* 995 S.W.2d 675, 677 (Tex.1999) (when party presents multiple grounds for reversal, court must first address issues that would afford greatest relief).

**2.** As will be explained in greater detail in the section below on objections to the jury charge, the court submitted an incorrect statement of the law to the jury. In reviewing the legal sufficiency of the evidence, however, we will compare the evidence to the proper legal standard for involuntary commitment from the current version of section 574.035(a). *See Winfield v. Renfro,* 821 S.W.2d 640, 644–45 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

## B. Analysis

Dr. Fred Fason testified he evaluated Campbell at the court's request on three occasions, each about a year apart. He stated that, in performing these evaluations and preparing his reports, he conducted interviews with Campbell, the victim, and the victim's mother. He also reviewed the evaluation reports and records of treating physicians, the records of Campbell's hospitalization, the offense report, Campbell's response to a form requesting biographical information, and the result of a Minnesota Multiphasic Personality Inventory (MMPI) given to Campbell. Each of Dr. Fason's reports were admitted into evidence in the present case. The most recent report, signed May 21, 2001, includes a statement substantially tracking the current language of section 574.035(a)(2)(C).[3] Additionally, Dr. Fason testified that in his opinion: (1) Campbell is a mentally ill person; (2) Campbell's illness "substantially" impairs his perception of reality, his emotional process, or his judgment; (3) if not treated he will continue to suffer severe and abnormal mental, emotional, or physical distress; (4) if not treated he will continue to experience deterioration of his ability to function independently; and (5) he is unable to make a rational and informed decision as to treatment.

Dr. David Suire, a psychologist who conducted regular therapy sessions with Campbell, testified that Campbell's responses during psychological testing indicated he chronically distorts reality, has flawed judgment, is vulnerable to emotional problems, and likely has very ineffective decision-making. Suire further questioned Campbell's commitment to his therapy regimen, in part based on his failure to complete a journaling assignment and his one time escape from the hospital.

Dr. Yousuf Allawala, Campbell's attending psychiatrist, testified he did not think Campbell was ready to be discharged. He further stated Campbell has a chronic mental illness and that, if not treated, he will: (1) continue to suffer severe and abnormal mental, emotional, or physical distress; (2) continue to experience deterioration of his ability to function independently; and (3) be unable to make a rational and informed decision regarding treatment.

Voluminous medical records, documenting various outbursts and odd behaviors as well as more serious incidents, were admitted into evidence. The records describe specific incidents in which Campbell refused his medication, refused medical treatment when he was sick or injured, and destroyed his stereo in such a fit of anger that he had to be restrained. Furthermore, Campbell's testimony provided the jury an opportunity to personally evaluate his mental faculties.

Although many of the prosecutor's questions to witnesses were based on an incorrect standard for involuntary commitment, as is discussed below, the testimony adduced at trial is certainly some evidence tending to support a finding under the proper standard. Moreover, the documentary evidence, including Dr. Fason's most recent report, also provides proof under the correct standard. Accordingly, we find there is more than a scintilla of evi-

---

**3.** Specifically, the report states that Campbell: "is suffering severe abnormal mental, emotional, or physical distress; is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety; and, is unable to make a rational and informed decision as to whether or not to submit to treatment."

dence to support the trial court's order extending inpatient care. *See Niswanger,* 875 S.W.2d at 798. Campbell's legal sufficiency issue is overruled.

### III. The Jury Charge

In three issues, Campbell argues the trial court erred in denying his objections and in refusing his requested additions to the jury charge. Specifically, he asserts the court erred in using superceded law in Special Issue No. 2(c), which the jury answered against him. He further complains the trial court erred in its definition of "clear and convincing" evidence.

### A. Special Issue No. 2(c)

■ Campbell contends the trial court submitted incorrect law to the jury in Special Issue No. 2(c). This jury question asked whether Campbell:

> will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.[4]

Under current law, a judge may order extended inpatient mental health services if it is found, among other criteria,[5] that the proposed patient is:

> (i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment....

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a)(2)(C).

■ We review a trial court's submission of jury questions under an abuse of discretion standard. *Riddick v. Quail Harbor Condo. Ass'n, Inc.,* 7 S.W.3d 663, 673 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The trial court has broad discretion in submitting jury questions so long as the charge fairly places the disputed issues before the jury. *Varme v. Gordon,* 881 S.W.2d 877, 881 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

■ Generally, when a court submits a statutory cause of action to the jury, the charge should track the language of the provision as closely as possible. *Borneman v. Steak & Ale of Tex., Inc.,* 22 S.W.3d 411, 413 (Tex.2000). The jury charge in the present case differs from the applicable statutory language in several ways, as illustrated below:

| Current Law | Jury Charge |
| --- | --- |
| "is suffering" | "will, if not treated, continue to suffer" |
| "substantial ... deterioration of ... ability to function independently" | "deterioration ... of ... ability to function independently" |

---

4. This language tracks almost exactly the language of a superceded version of section 574.035(a)(2)(C).

5. The other criteria include that the proposed patient is a mentally ill person and that the condition is expected to last for more than ninety days. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a). These criteria were presented to the jury, found in the affirmative, and Campbell makes no complaint regarding that portion of the charge on appeal.

"exhibited by ... inability ... to provide for ... basic needs, including ..."

No comparable provision

We find because of the discrepancies in the charge that the charge does not fairly place the statutory issues before the jury. *See id.; Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). Accordingly, we find the trial court erred in its submission of Special Issue No. 2(c).

An incorrect jury question is only grounds for reversal if it probably caused the rendition of an improper judgment. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex.2001). In determining whether charge error probably caused rendition of an improper judgment, we analyze the entire record. *Timberwalk Apartments Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998). An improper instruction is especially likely to result in an unfair trial when the evidence is "sharply conflicting" on the issue presented. *Quantum Chem.*, 47 S.W.3d at 480; *see also Timberwalk Apartments*, 972 S.W.2d at 756 ("vigorous evidentiary dispute"); *Texas Dept. of Human Servs. v. Hinds*, 904 S.W.2d 629, 637 (Tex.1995) ("serious dispute ... vigorously and convincingly disputed").

In the present case, the degree to which Campbell experienced deterioration of his ability to function independently was vigorously disputed. Expert witnesses disagreed in their analysis and conclusion on this very issue. Also, testimonial and documentary evidence was admitted that could be interpreted as exhibiting either an unfettered ability to function independently or a deterioration in that ability. Daily behavioral logs and testimony from staff members indicated that Campbell was often lucid, cooperative, and determined to further his treatment. Other entries and testimony suggested that Campbell may have been difficult to deal with at times, may have been destructive of his own property, and may have refused medical treatment when needed. The degree to which this evidence amounted to proof of Campbell's mental or physical deterioration was certainly a fact issue for determination by the jury. The failure of the jury charge to include the statutory modifier "substantial," to describe the necessary level of deterioration, and the failure to include the phrase "basic needs" and the accompanying examples, probably caused the rendition of an improper judgment. In support of our finding, we note the jury sent out three different questions or requests to the judge and found in Campbell's favor on Special Issues No. 2(a) (likely to harm himself) and No. 2(b) (likely to harm others). *Cf. Quantum Chem.*, 47 S.W.3d at 480 (note to judge seen as evidence of jury confusion caused by incorrect charge). The evidence was sharply conflicting, and the jury was obviously not adverse to finding in Campbell's favor.

Thus, we find the charge error probably caused rendition of an improper judgment. *See id.* Accordingly, Campbell's second issue is sustained.[6]

## B. Defining "Clear and Convincing"

In his fourth issue, Campbell contends the trial court erred in overruling his objections to the court's definition of

---

6. Campbell's first issue improperly attempts to make the jury charge issue a constitutional question. This issue is overruled. We remand this case instead of rendering because the charge error was a matter of defective submission and not a complete omission of a cause of action or an element thereof. *See Borneman*, 22 S.W.3d at 413.

the burden of proof and in rejecting his proposed substitution. In mental health commitment proceedings, the "clear and convincing evidence" standard of proof controls. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.035(a); *In re G.B.R.*, 953 S.W.2d 391, 395–96 (Tex.App.-El Paso 1997, no writ). Campbell specifically argues that, in defining this standard for the jury, the trial court should have included: (1) the full definition from case law; (2) the requirements for clear and convincing evidence contained in the applicable statute; and (3) further definitions of terms in the definition section of the charge.

▮▮▮▮ As we stated above, charge error is reviewed under an abuse of discretion standard. *See Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 661 (Tex.App.-Houston [14th Dist.] 1998, no pet.). The trial court is accorded wide discretion in submitting explanatory instructions and definitions. *Id.* The goal of the charge should be to submit the issues in the case logically, simply, clearly, fairly, correctly, and completely. *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex.1999). To that end, the trial court is granted broad discretion so long as the charge is legally correct. *Id.* If the charge resolves the controlling issues in a feasible manner that does not confuse the jury then no error occurs. *Friday v. Spears*, 975 S.W.2d 699, 700 (Tex.App.-Texarkana 1998, no pet.); *Connell Chevrolet Co., Inc. v. Leak*, 967 S.W.2d 888, 894 (Tex.App.-Austin 1998, no pet.). Simplicity in the jury charge must be an overriding concern. *Bayliner Marine Corp. v. Elder*, 994 S.W.2d 439, 447 (Tex.App.-Beaumont 1999, pet. denied) (citing *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984)). A court must include definitions for terms used in the charge that have a technical or legal meaning apart from the meaning in ordinary usage. *See Reliable Consultants,*

*Inc. v. Jaquez*, 25 S.W.3d 336, 344 (Tex. App.-Austin 2000, pet. denied).

In the charge, the trial court defined "clear and convincing evidence" as "proof, not beyond a reasonable doubt, but proof greater than a preponderance of the credible evidence." In the seminal case of *State v. Addington*, 588 S.W.2d 569 (Tex. 1979), the Texas Supreme Court defined clear and convincing as:

> that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.

*Addington,* 588 S.W.2d at 570; *see also In re D.F.R.*, 945 S.W.2d 210, 214 (Tex.App.-San Antonio 1997, no pet.). The trial court included part of this definition in its charge; we must now determine whether an expanded definition was required.

### 1. The *Addington* Definition

▮▮▮ Campbell first contends the trial court erred in refusing to include the remainder of the definition from *Addington* in the jury charge. We agree. Based on the supreme court's definition and use of "clear and convincing evidence," we find the phrase possesses a specific legal meaning. *See Addington,* 588 S.W.2d at 570; *see also Reliable Consultants,* 25 S.W.3d at 344 (court must include definitions for terms with specific legal meanings). In *Stevens v. Nat'l Educ. Ctrs. Inc.*, 11 S.W.3d 185 (Tex.2000) (*Stevens II* ), the supreme court, while denying the petitions for review for procedural reasons, specifically wrote to refute our opinion in *Stevens v. Nat'l Educ. Ctrs., Inc.*, 990 S.W.2d 374 (Tex.App.-Houston [14th Dist.] 1999) (*Stevens I* ). In our opinion, while we ac-

knowledged that the supreme court had previously defined "mental anguish," we held the trial court's definition of the term was not in error despite its falling short of the supreme court's definition. *See Stevens I*, 990 S.W.2d at 379. We based our holding on our conclusion that mental anguish is not a legal term, but is of ordinary significance and meaning. *Id.* In its *Stevens II* opinion, the supreme court specifically stated the trial court's definition was in error because it fell short of the supreme court's definition of mental anguish. *See Stevens II*, 11 S.W.3d at 185 (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995)). Applying the reasoning of *Stevens II* to the present case, we hold the trial court erred in providing a definition of clear and convincing evidence that was substantially less complete than the supreme court's definition of the phrase in *Addington*. We need not analyze whether such error was harmful in this case because we have already determined the case should be remanded for a new trial. We sustain this subpart of issue number four.

### 2. Statutory Language

■ Campbell next contends the court should have also included the following statutory language in the jury charge:

> To be clear and convincing under subsection (a), the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:
>
> (1) the likelihood of serious harm to the proposed patient or others; or
>
> (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(e). We disagree. Unlike section 574.035(a), discussed above, section 574.035(e) does not mandate that the fact finder make any affirmative findings. In-

stead, it merely describes the nature of the evidence the State must provide in order to meet its burden of proof, *i.e.*, expert testimony and evidence of a recent overt act or continuing pattern of behavior. If the State fails to present either type of evidence then the State's case would be legally insufficient and, hence, would not present a question of fact for the jury. *See Roland v. State*, 989 S.W.2d 797, 800 (Tex.App.-Fort Worth 1999, no pet.) (discussing statutory requirements for legally sufficient evidence in commitment proceedings). Furthermore, Campbell's proposed instruction would be tantamount to asking the jury to determine who is qualified as an expert. This determination is reserved for the discretion of the trial court. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). We find the trial court did not abuse its discretion in refusing to include the language from section 574.035(e) in the jury charge.

### 3. Additional Definitions

■ Campbell also contends the trial court should have included definitions of both the "beyond a reasonable doubt" and "preponderance of the evidence" standards. Specifically, as to reasonable doubt, Campbell requested the court submit the definition from *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). The part of *Geesa* requiring a definition of reasonable doubt, however, was expressly overruled by *Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App.2000). In fact, the court in *Paulson* stated it was preferable that juries be given no definition of reasonable doubt. 28 S.W.3d at 573.

As to preponderance of the evidence, Campbell requested it be defined as meaning "only the greater weight of the credible evidence, that is by more than 50% of the credible evidence produced before the

jury." Although it is certainly common practice in civil cases to define preponderance of the evidence, when it is the applicable standard, Campbell does not cite any rules or cases requiring that his proposed definition of preponderance be given in the charge, and our research has discovered none. *See generally* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES PJC 40.3 (2000) (including definition of preponderance of evidence in general admonitory instructions). Furthermore, *the definition of clear and convincing evidence* provided to the jury contained the gist of Campbell's requested definition. The court's definition specifically states it is the "credible evidence" that must be examined, as Campbell requested. Additionally, the term "preponderance" in general usage sufficiently denotes the remainder of Campbell's requested instruction. *See* AMERICAN HERITAGE DICTIONARY 978 (2d ed.1991) (defining preponderance as "[s]uperiority in weight, quantity, power, or importance."). Given the considerable discretion accorded the trial court in defining terms for the jury and the emphasis on simplicity in jury charges, we find the trial court did not err in rejecting Campbell's definitions of the reasonable doubt and preponderance of the evidence standards.

In summary, we find the trial court *abused its discretion in its definition of the clear and convincing burden of proof*, but only to the extent that it failed to provide a complete definition as stated in *Addington*, 588 S.W.2d at 570. Campbell's fourth issue is sustained as to that sub-issue.

## IV. State's Cross–Point

### A. Standard of Review

■ The State contends in a crosspoint that no rational jury could have concluded Campbell was not likely to cause serious harm to others. The State requests that, if we reverse and remand the case for a new trial on Special Issue No. 2(c), we should also set aside the jury's response to Special Issue No. 2(b). This is essentially an attack on the factual sufficiency of the evidence supporting the jury's determination on Special Issue No. 2(b). That issue asked whether the jury finds Campbell "is likely to cause serious harm to others," and the jury answered, "We do not."

In a case tried under the clear and convincing evidence standard, a factual sufficiency issue should be sustained when "(1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing." *In re W.C.*, 56 S.W.3d 863, 868 (Tex.App.-Houston [14th Dist.] 2001, no pet.). In reviewing for factual sufficiency, we examine all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

### B. Analysis

As with the deterioration of his condition, the experts disagreed as to whether Campbell was likely to cause serious harm to others. Doctors Fason and Suire testified that Campbell was likely to cause such harm, whereas Dr. Theodore Pearlman, Campbell's expert, testified he was not. Campbell's current treating psychiatrist, Dr. Allawala, acknowledged only that there was a possibility that Campbell could be a danger to other people if he was not on medication.

Dr. Fason's prior reports included notations that Campbell had a hostile dependency on women that, if not resolved, placed the women close to him at risk. Fason described Campbell's sexual relationship with the victim of the attack as sado-masochistic. Fason also described

Campbell's violations of hospital rules as evidence of an inability to control his behavior.

Evidence was also introduced to demonstrate that Campbell had a number of confrontations with hospital staff, including at least one violent outburst in which he smashed his own stereo and had to be restrained. The hospital records also contain other notations of inappropriate behaviors, including anger and manipulation. An eyewitness to Campbell's attack on his girlfriend also testified. The attack was particularly brutal and left the victim blind in one eye and with limited sight in the other.

Dr. Pearlman testified Campbell had a mental illness that was in "complete remission." In preparing his report, Dr. Pearlman conducted a face-to-face interview with Campbell and examined his medical records, including the evaluations performed by Dr. Fason among others. Pearlman concluded Campbell was suitable for movement to a less restrictive environment such as outpatient commitment. He stated that, except for the time-limited psychosis that occurred when he attacked his girlfriend, there was no evidence to indicate a pattern of violent behavior. Pearlman also noted certain perceived deficiencies in the evaluation by Dr. Fason.

The State attacks the testimony of Dr. Pearlman as untrustworthy. Pearlman acknowledged in his testimony that at the time he wrote his report he was unaware of certain MMPI scores, which the State contends showed elevated results in key categories demonstrating dangerousness. Pearlman, however, became familiar with the results of that test prior to his in-court testimony. Additionally, the jury heard the cross-examination of the doctor on this issue and was, therefore, in a position to judge for themselves to what extent Pearlman's lack of earlier MMPI information impacted his evaluation. Pearlman testified about a wide range of data that formed the basis of his opinions, including other personality tests. Additionally, the State's experts were allegedly missing comparable information when forming their opinions. It was for the jury to sort out these discrepancies.

The State further asserts that Campbell's scores on the MMPI were not subject to interpretation, but were results that "ordinarily demonstrate manifest dangerousness." [7] However, the clear intent of the legislature is set out in Chapter 574 of the Health and Safety Code, and there is certainly no provision in the chapter accepting that MMPI scores alone suffice for involuntary commitment. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.001–154 ("Court-ordered Mental Health Services"). Instead, the legislature has set up a system wherein a judge, aided by jury or bench findings, makes the ultimate determination on commitment. *Id.* § 574.035(a). In order to commit a person, the evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that demonstrates at least one of several possible criteria. *Id.* § 574.035(e). The evidence may include scores on personality tests, but the judge and jury are not constrained under the statutory scheme to follow the results of those tests.

The documentary evidence included voluminous reports, daily logs, and evaluations. Notable among these is a series of evaluations by Campbell's attending physicians recommending his release. Although these evaluations are from prior years, they constitute some evidence on which the jury could have based its finding. The

---

7. Dr. Fason stated in his May 30, 2000, report that Campbell's combination of scores on the MMPI tests "are generally found only in individuals who are manifestly dangerous."

daily behavioral logs indicate Campbell was often very lucid, cooperative, and determined to further his treatment.

Furthermore, Campbell testified, thus the jury could have to some extent judged his demeanor and condition for themselves. Campbell described his course of treatment and his progress from being "completely psychotic" to being ready for release. He stated that he "absolutely" needed to take his medication and he understood the good the drugs did for him. He acknowledged his occasional resistance to hospital rules but explained he thought some of the rules were unfair. Although we are reluctant to assign a great deal of weight to his self-serving testimony, it is some evidence on which the jury could have based its finding.

In sum, there was significant evidence submitted on both sides of the issue as to whether Campbell was likely to cause serious harm to others. Consequently, the jury's finding was not so contrary to the weight of contradicting evidence that no trier of fact could have reasonably found the evidence to be clear and convincing. *See In re W.C.*, 56 S.W.3d at 868. We overrule the State's cross-issue.

## V. Conclusion

We hold the trial court committed harmful error in charging the jury on incorrect law in Special Issue No. 2(c). We remand for a new trial on that special issue alone, having found the evidence sufficient to support the jury's response to Special Issue No. 2(b). Additionally, we also find error in the trial court's definition of "clear and convincing evidence" in the jury charge.

We need not address Campbell's remaining issue concerning the denial of his motion for a continuance because resolution of his complaints under that issue would have no bearing on the re-trial of this case.

The order of the trial court is reversed and this cause is remanded for a new trial in accordance with this Court's opinion.

EDELMAN, Justice, dissenting.

According to the majority opinion, the operative portion of a correct jury charge would have differed from that submitted by the language enclosed in brackets:

> will, [if not treated,] continued to suffer [is suffering] severe and abnormal mental, emotional, or physical distress and will continue to experience [*substantial*] deterioration of his ability to function independently [*which is exhibited by an inability to provide for basic needs including food, clothing, health, or safety*] and is unable to make a rational and informed decision as to whether or not to submit to treatment.

The majority opinion concludes that the omission of the italicized portions probably had a profound effect on the jury's deliberations because: (a) the issue of appellant's ability to function independently was vigorously disputed; (b) conflicting evidence was presented on this issue; and (c) the jury sent out three different questions or requests to the judge and found in appellant's favor as to whether he was likely to harm himself or others. I disagree with this conclusion in two respects.

First, under the charge submitted, the jury found that, if not treated, appellant would: (1) continue to suffer severe and abnormal mental, emotional, or physical distress; (2) continue to experience deterioration of his ability to function independently; *and* (3) be unable to make a rational and informed decision as to whether to submit to treatment. Because the language of the first and third elements would have been substantially unchanged in a correct submission, there is

no uncertainty about the jury's findings that, without treatment, appellant would remain severely disturbed and unable to make rational treatment decisions. The only question can be as to appellant's ability to function independently.

Importantly, however, this was not ordinary civil commitment of someone who simply couldn't take care of himself. Appellant was involuntarily committed because he had been found insane when he attacked his girlfriend with a knife, severely injuring her face and leaving her blind in one eye and with limited sight in the other. The issue in this proceeding was whether that commitment should be extended for another year. In the context of a decision of this type and magnitude, I do not believe that modifying the word, "deterioration" with "substantial" or adding the "basic needs" phrase would have materially changed the meaning of the overall inquiry to a rational jury.

Secondly, with regard to the evidence, the majority opinion acknowledges that the evidence of appellant's behavior, *even while under treatment,* varied from being positive at times to being difficult, destructive of his own property, and irrational at others. In that appellant had failed to consistently function adequately with treatment, was there really a close issue on the overall question of his further commitment based on his ability to function independently without it? Despite how vigorously the issue was litigated and the jury's questions, requests, and findings on harm, I would conclude that there was not and affirm the judgment of the trial court based on a lack of harm.