**Opinion filed February 28, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00043-CV

_____

## IN THE MATTER OF J.H.N.

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. B-30,621**

### M E M O R A N D U M   O P I N I O N

J.H.N. has filed an appeal from an order renewing a previous order for extended mental health services. *See* former TEX. CODE CRIM. PROC. art. 46.03, § 4(d)(5)[1]; *see also* TEX. HEALTH & SAFETY CODE ANN. §§ 574.035, .066, .070 (West 2017). On appeal, Appellant presents one issue in which he challenges the

---

[1]Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, sec. 4(d)(5), 1983 Tex. Gen. Laws 2640, 2644–46, *repealed by* Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 1, 2005 Tex. Gen. Laws 2841, 2841; (current version at TEX. CODE CRIM. PROC. ANN. art. 46C.261 (West 2018)). We note that former Article 46.03 applies here because Appellant committed the underlying offense prior to the repeal of Article 46.03. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 831, §§ 5–6, 2005 Tex. Gen. Laws at 2853–54 (offense committed before September 1, 2005, the effective date of Article 46C.261, is covered by the law in effect when the offense was committed); *In re L.A.T.*, No. 05-15-00043-CV, 2015 WL 4572510, at *1 n.1 (Tex. App.—Dallas July 30, 2015, no pet.) (mem. op.).

legal sufficiency of the evidence to support the renewal of his involuntary inpatient treatment. We affirm.

*Background Facts*

Appellant suffers from undifferentiated schizophrenia. In 2003, Appellant killed his mother with a butcher knife, almost decapitating her; he also drowned his dog. In 2004, he was tried for murdering his mother, was found not guilty by reason of insanity, and was committed to North Texas State Hospital. Upon being discharged from there, he was placed in Big Spring State Hospital (BSSH), a less restrictive facility, where he currently remains.

Four witnesses testified at the hearing in this cause: Dr. Feroz Yaqoob, Dr. Shiral Vahora, Dr. Roddy Marlene Strobel, and Appellant. Drs. Yaqoob and Vahora are staff psychiatrists at BSSH. At the time of the hearing, Dr. Yaqoob had been treating Appellant for six months.

Appellant had a history of schizophrenia. While an inpatient in the state hospitals, Appellant had a few episodes of psychosis: one of which was probably related to his illegal use of cannabinoids. One of the episodes of psychosis occurred in 2005. Another occurred in 2009. After the episode in 2009, Appellant tested positive for cannabinoids, but he denied having voluntarily consumed any marihuana. The most recent episode occurred in 2011. Appellant takes medication for psychosis, but according to Dr. Yaqoob, Appellant "does not really recognize that it's for psychosis. He thinks that it's just for depression. That he doesn't have any, any psychosis." Dr. Yaqoob was concerned that, if released to an outpatient setting, Appellant would stop taking his medication, which would increase the chance of him having a psychotic episode. Appellant did not understand what the medication was for.

Appellant also did not understand that his use of marihuana exacerbated his mental illness. Appellant continued to have a pro-cannabinoid stance but said that he can control his drug use.

Regarding the possibility of Appellant's release, Dr. Yaqoob opined that Appellant was "still a risk . . . primarily because of the lack of insight . . . into his mental illness, as well as his substance abuse history." Dr. Yaqoob testified that Appellant needs to accept his diagnosis of schizophrenia, understand why he takes medications and why he needs to continue taking them, and understand that he needs to refrain from any use of illegal drugs, which could "trigger another psychotic break and result in him harming someone." Hospital staff had worked with Appellant on these things for thirteen or fourteen years, but Appellant was "still not there yet." Based on his evaluation, Dr. Yaqoob testified that Appellant's condition would continue beyond the next ninety days. Dr. Yaqoob did not think that it would be appropriate to release Appellant at that time, and he indicated that the public would be at risk if Appellant were to be released. Because of Appellant's continued lack of insight, Dr. Yaqoob believed that Appellant would "probably" not be compliant. Dr. Yaqoob was also concerned about the lack of any plan or living arrangements for Appellant if he were to be released.

Dr. Vahora testified that he was asked to perform a consult for the purpose of giving a second opinion regarding a possible extension of Appellant's commitment. Dr. Vahora reiterated much of Dr. Yaqoob's testimony. He also pointed out that Appellant had had prior psychotic episodes and had been committed to a psych facility in 1996, years prior to killing his mother. Dr. Vahora said that Appellant's progress notes indicated that "he was doing better" and that "his aggression has decreased," but Dr. Vahora was still concerned about Appellant's issues with "insight into his substance abuse" and "a deeper understanding into his psychiatric problems." Appellant had stated that, if he had been using marihuana at the time of

3

his mother's death, he would not have killed her; Appellant believed that marihuana would have relaxed him. Dr. Vahora indicated that Appellant's thought process in that regard is "consistent with a psychotic thinking" and showed that Appellant did not understand the effect that drugs had on him. Appellant had recently said that "if somebody offered him drugs after probation, he might do it." Another concern for Dr. Vahora was that Appellant seemed to lack a sense of remorse for murdering his mother.

Dr. Vahora said that "it is possible" that Appellant could be placed in a long-term drug rehab instead of BSSH but that predicting future behavior is difficult. Dr. Vahora indicated that past behaviors usually flagged certain vulnerabilities and future conduct. Despite certain improvements in Appellant and the lack of recent overt acts of aggression by Appellant, Dr. Vahora believed that Appellant needed to continue with inpatient care until Appellant had a better understanding of his issues.

Dr. Strobel, the medical director for the MHMR clinic that serves the Permian Basin area, testified that her duties include seeing "chronic seriously mentally ill adults in [the Odessa] clinic for medication management." Dr. Strobel explained the three levels of services that would be available to a patient released from a state hospital. None of the three provided a great deal of supervision.

Appellant acknowledged during his testimony that he murdered his mother in 2003. He testified that he had resided at BSSH for almost thirteen years and that he was aware of the reason for the hearing. Appellant knew what medications he took and the dosage. He testified at trial that he thought the medications helped because he felt "good" and "[h]appy." Appellant testified about his daily activities at BSSH, which included horticulture-related activities such as building compost piles, gardening, and mowing the lawn. Appellant also took classes and studied to keep his mind occupied. Appellant indicated that he took his medications as instructed by the doctors, that he had never refused to take any medication, and that he had no

4

thoughts or ideations about wanting to hurt himself or others. Appellant testified at trial that, with his medications and mental illness, marihuana "is not for [him]." However, about six months prior to trial, Appellant had said that he dreamed of going to Golden Gate Park, taking a hit of marihuana, and just sitting there and enjoying the view.

Appellant believed that he was ready to be released. He testified that he was not going to commit another murder, that he was willing to take his medications, and that he would monitor himself. Appellant recognized, however, that part of the problem with him being released was that there was nowhere for him to go in Ector County.

At the end of the hearing, the trial court stated:

> You asked the first doctor if within reasonable medical probability he was going to use cannabinoids and that would trigger a psychotic episode, and his . . . answer, I thought, was very telling.
>
> And he said that you judge someone's future actions most times by what they did in the past. And I have listened very carefully to that.
>
> And part of my job is also to determine the veracity, the truthfulness of the testimony.
>
> And I watched [Appellant] very carefully as I have for the past how many ever years that . . . we've had these hearings.
>
> And his testimony troubles me. I'll be very candid with you . . . .
>
> He, he's not candid. He's not candid with the Court. He doesn't answer questions truthfully, in the Court's opinion
>
> He says what he thinks he needs to say is my view.

*Analysis*

Under the applicable law, a court that committed an acquitted person to an inpatient treatment facility is required to either order the person's discharge or hold a hearing prior to the expiration of the commitment order to determine if the person

continues to meet the criteria for involuntary commitment. Former CRIM. PROC. art. 46.03, § 4(d)(5).[2] Such hearing must be conducted pursuant to "pertinent" provisions of the Mental Health Code. *Campbell v. State*, 85 S.W.3d 176, 182 (Tex. 2002) (construing former CRIM. PROC. art. 46.03, § 4(d)(5)). The pertinent provisions of the Mental Health Code have been held to include portions of Sections 574.035 and 574.066. *Martin v. State*, No. 14-14-00730-CV, 2015 WL 5634397, at *2 (Tex. App.—Houston [14th Dist.] Sept. 24, 2015, no pet.) (mem. op.); *Martin v. State*, 222 S.W.3d 532, 534–36 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Campbell v. State*, 125 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see* HEALTH & SAFETY §§ 574.035, .066.

Under Section 574.066, a court may renew an order for inpatient mental health services if it finds that the patient meets the criteria for involuntary commitment set forth in Section 574.035(a)(1), (2), and (3). HEALTH & SAFETY § 574.066(f) (specifying the procedure for the renewal of an order for extended mental health services). Section 574.035(a) provides that the trial court may order extended inpatient mental health services if the trier of fact finds that the following requirements have been proved by clear and convincing evidence:

> (1) the proposed patient is a person with mental illness;
>
> (2) as a result of that mental illness the proposed patient:
>
> > (A) is likely to cause serious harm to the proposed patient;
> >
> > (B) is likely to cause serious harm to others; or
> >
> > (C) is:

---

[2]We note that the current version of the statute varies from the former version in various aspects, including the renewal provisions. The current version provides: "A court shall renew the order only if the court finds that the party who requested the renewal has established by clear and convincing evidence that continued mandatory supervision and treatment are appropriate." CRIM. PROC. art. 46C.261(h).

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment;

(3) the proposed patient's condition is expected to continue for more than 90 days; and

(4) the proposed patient has received court-ordered inpatient mental health services under this subtitle or under Chapter 46B, Code of Criminal Procedure, for at least 60 consecutive days during the preceding 12 months.

HEALTH & SAFETY § 574.035(a). To constitute clear and convincing evidence under Section 574.035(a), the evidence must include "expert testimony *and evidence of a recent overt act or a continuing pattern of behavior* that tends to confirm" either (1) "the likelihood of serious harm to the proposed patient or others" or (2) the proposed patient's distress and the deterioration of his ability to function. *Id.* § 574.035(e) (emphasis added); *see Campbell*, 125 S.W.3d at 5.

Here, the trial court found that Appellant "is mentally ill, and as a result of that illness, he is likely to cause serious harm or bodily injury to others and is suffering severe and abnormal mental, emotional or physical distress as set forth in [Section 574.035](a)(2)(C)." The trial court further found no evidence that Appellant could be treated and supervised safely and effectively as an outpatient.

On appeal, Appellant argues that the evidence is legally insufficient to show (1) that he was likely to cause harm to himself or others and (2) that he had recently committed an overt act or exhibited a continued pattern of behavior tending to confirm the likelihood that Appellant would do harm to himself or others. To conduct a legal sufficiency review in a case where the burden of proof is by clear and convincing evidence, we must consider all the evidence in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of its findings. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

We first note that it is undisputed that Appellant remains mentally ill, thus fulfilling the initial requirement for commitment under Section 574.035(a). As set forth above, in order to be clear and convincing regarding dangerousness to one's self or others, the record must include evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the patient or others. *See* HEALTH & SAFETY § 574.035(e); *Martin v. State*, 222 S.W.3d 532, 534–35 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Although the evidence did not reveal any recent overt act that would satisfy the statutory requirements, the evidence—including Appellant's medical history and the doctors' testimony—did indicate a continuing pattern of behavior that tended to confirm either (1) the likelihood of serious harm to others or (2) Appellant's distress and the deterioration of his ability to function. *See* HEALTH & SAFETY § 574.035(e). We conclude that a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the findings made by the trial court in this case pursuant to Section 574.035(a). *See House v. State*, 261 S.W.3d 244, 245–54 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Accordingly, we hold that the evidence is

sufficient to support the renewal order, and we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


February 28, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.