In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00108-CR
_____

JOSEPH KEVIN ADAMICK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 16-07-08376-CR

## MEMORANDUM OPINION

In four appellate issues, Joseph Kevin Adamick contends his conviction for continuously sexually abusing a child should be reversed. Adamick argues (1) the trial court abused its discretion by admitting evidence about two extraneous offenses, which he claims violated his right to due process; (2) the trial court should have excluded the evidence about the extraneous offenses because it was more prejudicial than probative; (3) the trial court should have excluded the testimony of the State's expert, who has a doctorate in clinical psychology, because his testimony was not

1

relevant to the facts at issue in Adamick's case; and (4) the State failed to produce enough evidence to support the jury's finding that he was guilty of the offense for which he was tried. For the reasons explained below, we affirm.

Sufficiency of the Evidence

Because granting Adamick the relief he would be entitled to receive should we find that his fourth issue has merit would result in a judgment of acquittal, we review that issue before reviewing Adamick's first three issues.[1] In issue four, Adamick argues the evidence admitted in his trial fails to support the jury's verdict finding him guilty of committing the alleged continuous sexual assault of the children, who are identified in Adamick's indictment. The standard of review that applies to Adamick's fourth issue is the standard established by the United States Supreme Court in *Jackson v. Virginia*.[2] In reviewing whether sufficient evidence was admitted to support a jury's verdict, *Jackson* requires that appellate courts view the evidence the jury considered "'in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a

---

[1] *See* Tex. R. App. P. 43.3 (requiring that appellate courts render judgment in an appeal unless a remand is necessary); *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (explaining the reviewing court should first address the complaints that would afford the defendant the greatest relief).

[2] *See* 443 U.S. 307, 319 (1979).

rational juror could have found the essential elements of the crime beyond a reasonable doubt.'"[3] In conducting our review, we must keep in mind that "[t]he jury is the sole judge of credibility and weight to be attached to the testimony of witnesses."[4] In its role as the factfinder in the case, the jury may choose to believe all, some, or none of the testimony admitted into evidence during the trial.[5] And the jury may draw multiple inferences from the evidence as long as the inferences that it drew were reasonable and they were supported by the evidence admitted during the trial.[6] If the record reveals that the jury could have drawn inconsistent inferences from the evidence, we still must presume the jury resolved any such conflicts in a manner that favors the jury's verdict, and we must defer to the ultimate conclusion the jury reached in the dispute if its resolution was reasonable based on the evidence that was before it in the trial.[7] "Under this standard, evidence may be legally insufficient when the record contains either no evidence of an essential element,

---

[3] *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Jackson*, 443 U.S. at 318-19).

[4] *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319).

[5] *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

[6] *Temple*, 390 S.W.3d at 360 (citing *Jackson*, 443 U.S. at 319).

[7] *Id.*

3

merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt."[8]

Under Texas law, a person seventeen years of age or older commits the crime of continuous sexual abuse of either a young child, or children, if, during a period of thirty days or more, the person commits two or more acts of sexual abuse against one or more children who are not yet fourteen.[9] The crime of continuous sexual abuse, given the statute's definition of "sexual abuse," includes indecency with a child by contact, sexual assault, and aggravated sexual assault. [10, 11]

---

[8] *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

[9] *See* Tex. Penal Code Ann. § 21.02(b) (West Supp. 2018).

[10] *Id.* § 21.02(c) (West Supp. 2018).

[11] Adamick's indictment alleged that between May 20, 2014, and October 8, 2014, a period that was thirty days or more in duration, he committed two or more acts of sexual abuse against (1) "Tracy," a child younger than 14 years of age, namely by crimes that involved both touching her in various places and by penetrating various parts of her body, and against (2) "John," a child younger than fourteen years of age, by having him touch the sexual organ of another child, "Molly," and against (3) Molly, a child younger than six years of age, by having her touch John's sexual organ with her hands and mouth, and by penetrating Molly with his sexual organ. We also note that Adamick's indictment employs "on or about" language regarding the dates the alleged offenses occurred. Therefore, any testimony in the record showing that Adamick sexually abused the children in the ways alleged in the indictment is evidence the jury could have used to find Adamick guilty, so long as the testimony concerned incidents of sexual abuse that occurred before July 21, 2016, the date the grand jury indicted him. *See Thomas v. State*, 444 S.W.3d 4,

4

In issue four, Adamick claims the jury could not reasonably rely on what he characterizes as "bare allegations by ["Tracy," "Molly" and "John"][12] of alleged sexual abuse" at his hands. But the evidence before the jury contains more than their bare allegations, since Tracy and John testified in the trial and there were adults who testified that the children told them about Adamick's acts of sexual abuse. While Adamick concedes in his brief that the uncorroborated testimony of a child who is the victim of sexual abuse is sufficient to support a conviction for aggravated sexual assault, he contends that the testimony before the jury was insufficient because the accounts the children gave about the abuse, whether in court or to adults who testified about what the children told them, were not reasonably credible.[13]

---

9 (Tex. Crim. App. 2014) (explaining that when the indictment employs the phrase "on or about" and the evidence admitted shows the defendant committed an offense on a date that differs from that dates in the indictment, "the offense took place 'on or about' the date alleged in the indictment" so long as the conduct proven in the trial occurred before limitations for that crime expired). We further note that no statute of limitations exists for the crime of continuous sexual abuse of a child. Tex. Code Crim. Proc. Ann. art. 12.01(1)(D) (West Supp. 2018) (we cite the current version of the statute because the changes the Legislature made to the limitations periods in section 12.01 are not relevant to the issues in Adamick's case).

[12] To protect the privacy of the children, their mother, and one of the other witnesses who is discussed in the opinion, we have chosen to identify them by using pseudonyms instead of using their names. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[13] *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2018).

Under the standards set out in *Jackson*, it is not the appellate court's role to re-evaluate the weight or credibility the jury assigned to the testimony and to the exhibits the jury considered during a defendant's trial.[14] "As factfinder, the jury is entitled to judge the credibility of witnesses, and [it] can choose to believe all, some, or none of the testimony presented by the parties."[15] Accordingly, under the *Jackson* standard, the jury was entitled to reject Adamick's alternative hypothesis claiming that another of the children's relatives might have committed the sexual abuse that the witnesses described in Adamick's trial.[16]

In deciding what evidence that it found believable, the jury was also entitled to reject both Adamick's testimony and the testimony of the witnesses he called, who suggested that Adamick never had the opportunity to be alone with Tracy, Molly, or John when the sexual abuse at issue occurred. Under the *Jackson* standard, we need not decide "what happened;" but instead must only be satisfied that the evidence allowed a reasonable jury to find Adamick guilty of the crime of continuous

---

[14] *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

[15] *Chambers*, 805 S.W.2d at 461.

[16] *Ramsey v. State*, 473 S.W.3d 805, 808 n.3 (Tex. Crim. App. 2015) (explaining the reasonable-hypothesis construct and that it was rejected in 1992).

sexual abuse under a standard of beyond reasonable doubt.[17] Thus, when evaluating whether there is enough evidence in the record to support the jury's verdict, we must decide whether the logical force of all the evidence, both direct and circumstantial, allowed the jury to reasonably determine that Adamick was guilty of the crime of continuous sexual abuse based on the acts alleged in his indictment.[18]

Applying the *Jackson* standard to the evidence before the jury in Adamick's case, we conclude the jury could have reasonably found, beyond reasonable doubt, that Adamick sexually abused Tracy in the manner alleged in the indictment at least two times prior to the day the grand jury indicted him. The jury heard Tracy testify during the trial that Adamick sexually abused her on three occasions.[19] Tracy, who

---

[17] *Merritt v. State*, 368 S.W.3d 516, 527 (Tex. Crim. App. 2012) (stating that an appellate court acts improperly "as a thirteenth juror when it speculate[s] and focuse[s] on the existence of a reasonable hypothesis inconsistent with the guilt of the accused"); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (explaining that in conducting a sufficiency review, the appellate court cannot use a divide-and-conquer approach, and that instead, it must "consider the combined and cumulative force of the evidence and view the evidence in the light most favorable to the jury's guilty verdict").

[18] *Tate v. State*, 500 S.W.3d 410, 417 (Tex. Crim. App. 2016) (citing *Thornton v. State*, 425 S.W.3d 289, 305 (Tex. Crim. App. 2014).

[19] Of the children identified in the indictment, only Molly was not called to testify during Adamick's trial. Molly was four years old when the abuse alleged in the indictment occurred, and she was six when the case was tried.

7

was nine years old when the trial occurred, explained that she was scared to testify, but that she was there because Adamick had abused her. According to Tracy, one of the acts of sexual abuse occurred in her home on the day that Adamick picked her up from school. Tracy testified the day the abuse occurred was the same day that she had been suspended from her school. Tracy's school records, which were admitted into evidence during the trial, show that Tracy was suspended from school on February 28, 2014, and on May 20, 2014. Both of Tracy's suspensions occurred on dates before the grand jury indicted Adamick for continuous sexual abuse. Following the first incident of abuse, Tracy claimed that Adamick sexually assaulted her "[t]wo more times." She described one of the later incidents as having occurred at Adamick's house after her mother, "Stephanie," left her there so that she could accompany Adamick's ex-spouse to the hospital. As to the last incident, Tracy claimed the abuse occurred at her house when she was nearly eight, but she could not remember the details about what happened then.

Adamick contends that no reasonable jury could have found Tracy's testimony or the testimony about what she told others credible. According to him, Tracy's testimony is not supported by the investigation the State did in the case. He notes that the State, during its investigation of his case, failed to find any physical, forensic, or medical evidence to corroborate Tracy's claims. Nonetheless, when a

child who the State has alleged is the victim of the defendant's sexual abuse testifies in the defendant's trial, the child's testimony will support a jury's verdict even if the testimony is not corroborated with other evidence that supports it.[20] And, the absence of physical, forensic, or medical evidence is but one of the factors that a jury may consider in weighing the evidence, but the lack of such evidence does not render a jury's finding insufficient to support the jury's verdict even when the verdict is based on the victim's testimony alone.[21]

Here, the jury could have concluded that Tracy did not tell Stephanie the truth when Stephanie first asked whether Adamick ever touched her on her private parts because Tracy, who was seven-years-old at that time, did not want to get in trouble with her mother. The jury could also have reasonably determined that any lack of physical, forensic, or medical evidence resulted from the delays that occurred between the date the sexual abuse occurred and the date the State first learned that Tracy was claiming that Adamick had sexually abused her.

---

[20] *See* Tex. Code Crim. Proc. Ann. art. 38.07; *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.).

[21] *See Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

We must defer to the jury's verdict when the evidence in the trial shows that the conclusion the jury reached was reasonable.[22] As was its role, the jury assessed Tracy's credibility when she testified and decided that it believed Tracy was telling the truth when she testified that Adamick sexually abused her three times. Tracy specifically described where two of the incidents occurred, and she told the jury about the sexual contact those two incidents involved.[23] Finally, although Adamick presented alibi witnesses in presenting his defense, the jury clearly rejected the testimony of his alibi witness when it found Adamick guilty. To prove that Adamick was guilty, the State was not required to exclude every conceivable alternative to its claim that Adamick committed the crime of continuous sexual abuse.[24] Generally, juries have the right to give the testimony of alibi witnesses, like any other witness who testifies in a trial, no weight.[25]

---

[22] *See Temple*, 390 S.W.3d at 360 (citing *Jackson*, 443 U.S. at 318-19).

[23] *Id.*

[24] *Merritt*, 368 S.W.3d at 525 (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993) (explaining that "the evidence is not rendered insufficient simply because appellant presented a different version of the events")).

[25] *See Temple*, 390 S.W.3d at 363 (noting that "[t]he jury was able to assess the credibility and demeanor of the witnesses who testified at trial").

10

In addition to Tracy's testimony, Stephanie's testimony provides additional support for the jury's verdict. During the trial, Stephanie testified that Tracy told her that Adamick sexually assaulted her "[t]he last time I was suspended." While Stephanie acknowledged that Tracy initially denied that Adamick ever touched her private parts when she first asked Tracy whether Adamick had ever touched her inappropriately, Stephanie also testified that Tracy later revealed what Adamick had done to her. Tracy also told Stephanie about the manner she was abused.[26] While Adamick argues that Tracy's testimony is not credible because she initially denied the abuse, but the fact that a witness equivocates about a defendant having committed a crime does not prevent a jury from finding the victim's testimony to be trustworthy.[27] Significantly, the testimony of an outcry witness like Stephanie is testimony that is considered as competent evidence to support a jury's verdict.[28] As

---

[26] Stephanie testified that she told Tracy that "she was not going to be in trouble and that she could tell me the truth no matter what the answer was."

[27] *See Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim. App. 1991) (explaining that the appellate court "does not have the power to step in and reevaluate the probity of an individual item of evidence in its review of the sufficiency of the evidence" in a case where the defendant's wife recanted about having previously made incriminating, out-of-court, statements to officers when she testified in the defendant's trial).

[28] *See Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005); *Rodriguez v. State* 819 S.W.2d 871, 873-74 (Tex. Crim. App. 1991).

such, Stephanie's testimony about what Tracy told her offers additional support for the jury's finding that Adamick sexually abused Tracy more than once.[29]

The sexual assault nurse who examined Tracy testified without limitation or objection during Adamick's trial. She examined Tracy in November 2014. The nurse testified that when she examined Tracy, Tracy told her:

> [Adamick] is sick. And he's been touching me a lot on my privates. Mommy and daddy weren't there because they were at work. My older brother was at school. He blindfolded me with a rag so I can't see. He touches back here -- points to the buttocks -- with his private part. He makes me lay on the floor. I sit down on the floor and he sits down on the floor. He does it at my house. It hurts. Mommy and daddy aren't there. He makes me do it. He puts it in my hiney and my mouth, all the way in and I choke. It tastes all wet. He's been doing it to my sister, too. I have seen him do it to her before, to [Molly].

The nurse's testimony, quoted above, provides additional support for the jury's conclusion that Adamick committed at least two acts of sexual abuse against Tracy prior to the day the grand jury indicted him for continuous sexual abuse.[30]

Because the State was required only to prove that Adamick committed two or more acts of sexual abuse that lasted for a period of thirty days or more during a period prior to his indictment, and we have determined that evidence addressing

---

[29] *See id.*

[30] *See Klein v. State*, 273 S.W.3d 297, 318 (Tex. Crim. App. 2008); *Hammock v. State*, 46 S.W.3d 889, 893-95 (Tex. Crim. App. 2001).

Tracy's abuse does that, we need not address whether the evidence also shows that Adamick sexually abused John or Molly to uphold the jury's verdict.[31] For the reasons we have explained, we overrule Adamick's fourth issue.

Evidence of Sexual Assault in 2000

"Alice" was twenty-one years old when Adamick stood trial.[32] During the trial, she testified that she was fourteen years old when Adamick moved into her home, where he lived with her family for two or three months.[33] Alice explained that Adamick raped her twice while he was living at her family's home. Nonetheless, she admitted during her testimony that she first told her parents about the two rapes nearly two years after they occurred.

---

[31] *See* Tex. R. App. P. 47.1 (allowing the Court's opinion to be no longer than necessary to advise the parties of the court's decision and the basic reasons for it); *see also* Tex. Penal Code Ann. art. 21.02(b) (requiring the State to establish that the defendant committed *two or more* acts of sexual abuse in a period that is 30 days or more to prove the defendant guilty of the crime of the continuous sexual abuse of a child) (emphasis added).

[32] The evidence before the jury shows that Adamick was born on December 28, 1990, so he was twenty-six when the trial occurred.

[33] It appears that Adamick would have been approximately nineteen years old when Alice lived in his home, a date we must approximate because Alice did not testify about the specific months that she lived in Adamick's home.

13

Prior to allowing the jury to hear Alice testify, the trial court conducted a hearing to determine whether the jury should hear Alice testify.[34] During the hearing, Adamick objected to Alice's testimony on the basis that the State failed to provide him with proper notice that it intended to present Alice as a witness regarding the alleged rapes. The State, however, advised the trial court that it did notify Adamick of its intent to call Alice to testify about the rapes. The trial court ruled that the State gave Adamick adequate notice, and it then heard Alice testify in the hearing about the two rapes.

After finding the State had given Adamick adequate notice about Alice's testimony, Alice then testified in the hearing conducted outside the presence of the jury so the trial court could determine whether the jury could find from the evidence the State desired to introduce in the trial that Adamick had committed the rapes.[35] After finding the evidence sufficient for that purpose, the trial court allowed Alice to testify before the jury in the trial.

---

[34] *See* Tex. Code Crim. Proc. Ann. art. 38.37, §§ 2, 2-a (West 2018) (requiring the trial judge before allowing a jury to consider evidence about extraneous offenses to determine whether the evidence likely to be admitted about the extraneous offenses would allow the jury to find, beyond reasonable doubt, that the defendant committed the extraneous offenses).

[35] *Id.*

14

In issues one and two, Adamick complains the trial court erred by admitting Alice's testimony that he raped her. For convenience, we discuss Adamick's second issue before addressing issue one. In issue two, Adamick complains the trial court abused its discretion by admitting Alice's testimony about the alleged rapes under article 38.37 because the evidence was more prejudicial than probative to proving him guilty on a crime in which Alice was in no way involved. The record before us in the appeal, however, reveals that Adamick never objected that Alice's testimony would be more prejudicial than probative when his case was tried.[36]

To preserve a complaint for appellate review, the record is generally required to show that the appellant complained about an alleged error by lodging a timely objection that stated the grounds for the ruling the defendant wanted the trial court to make.[37] "The objection must be sufficiently clear to give the judge and opposing counsel an opportunity to address and, if necessary, correct the purported error."[38] "A complaint will not be preserved if the legal basis of the complaint raised on

---

[36] *See* Tex. R. Evid. 403 (Excluding Relevant Evidence for Prejudice, Confusion, or Other Reasons).

[37] Tex. R. App. P. 33.1(a).

[38] *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016).

appeal varies from the complaint made at trial."[39] We conclude the complaints that Adam makes in his second issue were not preserved for the purpose of appellate review.[40]

In issue one, Adamick argues the trial court's decision to rely on article 38.37, section 2, of the Texas Code of Criminal Procedure violated his constitutional right to receive due process. But Adamick also failed to preserve this objection for our review. Generally, errors trial courts make when admitting evidence are subject to procedural default, regardless of the constitutional right that might be involved.[41] Adamick's objection at trial concerned an alleged lack of adequate notice, but he did not complain that admitting Alice's testimony that he raped her violated his right to due process. We overrule issues one and two because the record demonstrates that Adamick failed to preserve either issue for our review.[42]

---

[39] *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009).

[40] *Id*.

[41] *Darcy v. State*, 488 S.W.3d 325, 329 (Tex. Crim. App. 2016) (a complaint regarding evidence obtained in violation of the right to counsel is subject to procedural default).

[42] *See* Tex. R. App. P. 33.1.

## Expert Testimony

In issue three, Adamick argues the trial court abused its discretion by admitting the testimony of a psychologist, Dr. Lawrence Thompson Jr., because his testimony was not relevant to explaining the evidence when he testified as the first witness in the trial. The trial court conducted a hearing outside the presence of the jury to consider Adamick's objections to Dr. Thompson's testimony. During the hearing, Adamick agreed that Dr. Thompson would be testifying using a valid underlying scientific theory and that there was a valid technique to applying the theory. Adamick's objection in the hearing addressed only whether Dr. Thompson had properly applied the accepted scientific theories in his field to the facts of Adamick's case.[43] At the conclusion of the hearing, and after the trial court heard Dr. Thompson testify about how Dr. Thompson applied the theory in Adamick's case, the trial court found that Dr. Thompson was qualified to testify as an expert witness.[44] In ruling on Adamick's objection, the trial court noted that psychology is a "soft science," so the State needed to show only that the subject matter of the doctor's expected testimony would be based on the doctor's training in a legitimate

---

[43] *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

[44] *See* Tex. R. Evid. 702.

17

field of expertise, that his testimony was in the scope of the field of child psychology, and that the doctor had relied properly on the principles in his field of expertise to form the opinions he intended to express in the trial.[45]

While we have explained what Adamick complained about during the hearing, he never objected to Dr. Thompson's testimony on the basis that the testimony was irrelevant to Adamick's case. When the State called Adamick in the trial, Adamick objected to Dr. Thompson testifying as the first witness because the jury, at that point, had not yet heard any evidence in his trial. His objection suggests the trial court should have required Dr. Thompson to testify after other witnesses had testified about the facts of Adamick's alleged crime.

The trial court overruled Adamick's objections to taking Dr. Thompson out of order. After that, Dr. Thompson testified about his education, training, employment, and credentials, and he stated that he never reviewed any documents or offense reports created by others in Adamick's case. Next, he explained the concept of grooming in general terms, and why, in his experience with children, children often do not tell others that a trusted adult abused them shortly after the abuse occurred. He also explained that older relatives, such as a child's uncle, can use their knowledge about a child's relationship with that relative to allow the

---

[45] *See Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998).

18

relative to take advantage of the child. Dr. Thompson, however, never testified that he thought Adamick had taken advantage of his relationship with Tracy, John, or Molly based on the facts proven during Adamick's trial.

In his brief, Adamick argues the State failed to tie the pertinent facts in his case to the scientific principles that Dr. Thompson described when he testified before the jury in the trial. Nonetheless, the facts the State presented during the trial were tied to some of the general principles that Dr. Thompson addressed when he testified. For example, his testimony was helpful to the jury regarding the testimony that Rachel McConnell gave in the trial. McConnell conducted interviews of the children the State claimed that Adamick had sexually abused. She explained that in the first of the interviews she conducted with each child, neither John, nor Molly, ever told her that they had been sexually abused. McConnell explained, however, that Tracy described how Adamick sexually abused her.

Thus, Dr. Thompson's testimony, although general, about why children often do not immediately tell someone that they have been abused, is testimony that is generally relevant to the evidence the State introduced before the jury in the course of Adamick's trial.[46] For instance, his testimony added context that allowed the jury

---

[46] Tex. R. Evid. 401 (Test for Relevant Evidence), 402 (General Admissibility of Relevant Evidence).

to consider whether the delays in the outcries the children made about being sexually abused were due to circumstances like the ones he discussed.

When the relevance of the evidence at issue depends on whether a fact exists, proof must be introduced in the trial that is sufficient to support the trial court's implied finding that the fact does exist.[47] The trial court may, however, admit evidence out of order, contingent upon the party who is sponsoring the evidence introducing enough evidence later in the trial to show that the predicate required to make the evidence at issue relevant has been fulfilled.[48]

Here, the relevance of Dr. Thompson's testimony was established by other evidence introduced after Dr. Thompson testified. Even if the trial court admitted Dr. Thompson's testimony out of order, it had the discretion to do so given the fact that the evidence the jury heard during the trial made Dr. Thompson's testimony relevant to a disputed fact—why children make delayed outcries after being abused by an adult to whom the children are related. Moreover, even were we to find the trial court abused its discretion by allowing Dr. Thompson to testify out of order,

---

[47] *See* Tex. R. Evid. 104(b).

[48] *Id.*

that error, if any, has not been shown to have prejudiced any of Adamick's substantial rights.[49]

For these reasons, we overrule Adamick's third issue. Having considered all Adamick's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 5, 2018
Opinion Delivered February 27, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[49] *See* Tex. R. App. P. 44.2(b).