In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00297-CR
_____

CHARLES EDWARD BURKE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 163rd District Court
Orange County, Texas
Trial Cause No. B170500-R

MEMORANDUM OPINION

Charles Edward Burke appeals his conviction for continuous sexual abuse of a child, a first-degree felony. *See* Tex. Penal Code Ann. § 21.02(b), (h). In three issues, Burke (1) challenges his confession as the product of custodial interrogation and "coerced confession" violating his Fifth Amendment rights, (2) argues the trial court abused its discretion when it refused to allow cross-examination about the complainant's prior statements regarding other potential assailants, and (3) disputes

1

the sufficiency of the evidence to support a conviction. We affirm the trial court's judgment.

## I. Background

Sometime in 2015, Burke began living with N.H.'s family, and he resided there for about five months. N.H.'s biological mother, her stepfather, stepbrother, and two sisters also lived there. After Burke left, N.H. and one of her sisters, A.H., were removed from the home and placed in foster care. Approximately two weeks after N.H. was placed with her foster family, N.H. made an outcry of sexual abuse to her foster mother and named Burke as the suspect. The foster mother promptly called C.P.S. and reported N.H.'s outcry. The foster parents subsequently took N.H. to Garth House for a forensic interview and to be examined by a sexual assault nurse examiner (SANE).

Following the forensic interview, Garth House contacted detectives in the Orange County Sheriff's Office regarding the child's outcry. Garth House provided the name of Charles Burke as the suspect. Detectives located Burke and asked him to come into the police station. He agreed but did not have transportation and asked detectives for a ride. Once at the station, detectives first advised him that he was not under arrest, told him he was free to leave at any time, and that they wanted to ask him questions about some of the allegations. Detectives questioned him for a little

more than an hour. During the videotaped interview, Burke admitted to touching N.H.'s sexual organ on the outside of her clothes with his hand on multiple occasions.[1] Based on Burke's answers during the interview, including his admissions that he touched N.H.'s sexual organ through her clothes with his fingers, one of the detectives typed a statement. After she read the typewritten statement aloud to him, Burke signed it. Following the interview, detectives drove Burke home.

Many months later, they arrested Burke, and the State charged him with continuous sexual abuse of a child. The jury convicted him and sentenced him to fifty years. Burke timely filed a notice of appeal.

## II. Sufficiency of the Evidence

If meritorious, Burke's challenge to the sufficiency of the evidence would afford him the greatest relief, so we begin our analysis with that issue. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citations omitted) (noting that a reviewing court should first address issues affording the greatest relief).

When there is a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational

---

[1] The video was only admitted for purposes of the suppression hearing and not shown to the jury.

factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "This Court must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The jury is the sole judge of the witnesses' credibility and weight to be given their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Juries may draw multiple reasonable inferences from facts so long as each inference is supported by the evidence presented at trial. *Id.* Accordingly, we are required to defer to the jury's determinations of weight and credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899.

> A person commits an offense [of continuous sexual abuse of a child] if:
>
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age[.]

Tex. Penal Code Ann. § 21.02(b). Section 21.02 of the Penal Code defines "act of sexual abuse" as, among other things, indecency with a child. *Id.* § 21.02(c)(2). A

person commits the offense of indecency with a child if the person engages in sexual contact with the child or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). The Penal Code includes in its definition of "sexual contact" any touching of any part of the genitals of a child, including through clothing, if done with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1).

The indictment alleged that "during a period that was 30 or more days in duration" Burke "commit[ted] two or more acts of sexual abuse against a child younger than 14 years of age" and specifically asserted that "with the intent to arouse and gratify [his] sexual desire" he "engage[d] in sexual contact by touching the genitals of [N.H.], a child younger than 17 years and not the spouse of CHARLES EDWARD BURKE[.]" The State alleged these instances occurred on or about November 1, 2015, and on or about March 31, 2016.

N.H.'s foster mother testified as the outcry witness at trial. She said that approximately two weeks after N.H. came to their home, N.H. made statements to her about being sexually abused. Specifically, N.H.'s foster mother explained that "[N.H.] told me that Uncle Charles would squeeze her private parts and this would happen all the time at home in – on the porch, in the bathroom, and he would tell her not to tell anybody or he would get in trouble."

5

N.H. also testified at trial and described living with her biological mother, stepfather, and "Uncle Charles"[2] when she was six. N.H. told the jury that Burke touched her genitals with his hands. She testified this occurred multiple times while he lived with them. She recalled the incidents happened while she sat in his lap and that he smelled like beer. Burke told her not to tell anyone or he would get in trouble. N.H. also told the jury she experienced pain when she went to the bathroom following these incidents.

Detective Jessica Johnnie from the Orange County Sheriff's office testified they received a report from Garth House regarding alleged sexual abuse that occurred in Vidor, Texas, naming Burke as a suspect. The detective testified that she located Burke, and he voluntarily agreed to come talk to them. Detective Johnnie said that Burke admitted to committing the crime, and she put the admissions in writing for him to sign. Detective Johnnie identified the statement and explained the process she went through in preparing the statement for Burke to sign. The detective testified that she read the statement word-for-word to Burke, then asked him to sign it, which he did.

The State submitted as evidence Burke's statement containing his admission that he "would rub" N.H.'s vagina on the outside of her panties with his fingers. The

---

[2] N.H. referred to Burke as "Uncle Charles." Burke is her stepfather's cousin.

6

statement said this occurred while Burke lived with N.H.'s family for approximately five months. The statement indicated this happened "a total of three times." The statement also indicated that Burke moved out because he felt bad about it and knew it was wrong.

Finally, the SANE testified regarding her exam of N.H. She testified that the patient reported sexual abuse, but her examination did not reveal any injury to the anogenital area. The SANE testified that the lack of such a finding did not mean a sexual assault did not occur.

ANALYSIS

The testimony of a child victim alone is sufficient to support a conviction for indecency with a child by sexual contact and for continuous sexual abuse of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet ref'd) (referencing indecency with a child by sexual contact); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.) (referencing continuous sexual abuse). Moreover, a child victim's outcry alone can be sufficient to support sexual assault convictions. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). When addressing whether a child's outcry statement requires corroboration pursuant to article 38.07, the Court of Criminal Appeals has expressly stated "no such requirement exists" when the statements meet

7

the substantive requirements of Article 38.072. *Id.* at 874 (citing Tex. Code Crim. Proc. Ann. art. 38.072).

Either the child victim's testimony or her foster mother's outcry testimony alone was sufficient to support the jury's verdict of guilt beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899; *Rodriguez*, 819 S.W.2d at 873–74; *Chasco*, 568 S.W.3d at 258; *Garner*, 523 S.W.3d at 271. Here, the jury had the benefit of both witnesses, and their testimony was consistent. The jury also had Burke's signed statement admitting to the offense.[3] Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could find, beyond a reasonable doubt, that Burke committed the offense of continuous sexual abuse of a child younger than fourteen years of age. *See Brooks*, 323 S.W.3d at 899. We overrule Burke's third issue.

### III. Confession and Interrogation

Burke challenges the use of his confession and the interrogation tactics, contending they violated his Fifth Amendment privilege against self-incrimination because the confession was a product of an unwarned custodial interrogation and a

---

[3] Burke's statement contradicted N.H.'s testimony in that it indicated Burke touched her on the outside of her clothes, and she said that he touched her under her panties. However, "[w]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016).

product of compelled testimony. Prior to trial and after an evidentiary hearing, the trial court denied Burke's motion to suppress. In support of this issue, Burke first argues that officers violated the Fifth Amendment by failing to advise him of his rights during a custodial interrogation. His second argument in support of this issue is that his statements were involuntary, even if he was not subject to custodial interrogation.

We employ a bifurcated standard of review when examining a trial court's ruling on a motion to suppress. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citation omitted). Under that standard, we "give 'almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Id.* (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). Likewise, if the trial court resolves a motion to suppress based on mixed questions of law and fact, we give almost total deference to its evaluation of the credibility and demeanor of the witnesses. *Id.* (citing *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). If the trial court's findings do not depend on the trial court's evaluations of the credibility and demeanor of the witnesses or turn on resolving a question of law, we review its ruling *de novo*. *Id.* (citation omitted).

## A. Custodial Interrogation

Prior to any questioning in a custodial interrogation, a suspect must be provided certain warnings including the right to an attorney, the right to remain silent, and that any statement could be used against him. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* warnings must be given only if a suspect is in custody. *See Estrada v. State*, 313 S.W.3d 274, 293 (Tex. Crim. App. 2010).

"'In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Id.* (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)); *see also Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). Such a determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323. A noncustodial interrogation may transform into a custodial interrogation, and factors to consider in making that determination include: (1) the length of the interrogation; (2) the level of control police exercised over the defendant; and (3) whether the defendant made statements providing probable cause for arrest that a reasonable person would have

known to be incriminating. *Dowthitt*, 931 S.W.2d at 255, 257; *Morales v. State*, 371 S.W.3d 576, 590 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

Here, Burke voluntarily agreed to come in for questioning at the officers' request. He did not have a ride, so detectives brought him to the station unrestrained. A video recording of the entire interview was admitted during the suppression hearing. At the outset of the interview, the detective first advised Burke that he was not under arrest and free to leave at any time. The interrogation lasted less than an hour and a half. During the interview, detectives accused him of minimizing his conduct and lying. Burke gave incriminating statements and made admissions after one of the detectives falsely told him they had DNA evidence against him. One detective advised him that if he tried to minimize his conduct or not tell the truth, it would be "Katy bar the door" because she would come "unloose" on him. Burke was not restrained during this process at any time. One of the detectives then read a statement verbatim to Burke that they prepared as he answered questions, which he signed. After this took place, detectives drove Burke home and did not arrest him until approximately ten months later.

During the suppression hearing, Burke testified that he wanted to help the detectives when they interviewed him. Burke further testified that he never told the detectives during the interview that he did not want to talk to them or that he felt

11

threatened. The trial court's findings of fact included: (1) the detective's testimony was credible; (2) Burke's feeling that his physical safety was threatened was not credible; (3) the defendant never asked to leave; (4) his statement was read word for word to him; (5) there was no physical aggression by the detectives; (6) the interview was preserved by audio and video; (7) Burke was taken home after the statement; and (8) the factual misrepresentations made to Burke did not render the statement involuntary. The court made the following conclusions of law: (1) the statement was not the result of a custodial interrogation; (2) looking at the totality of the circumstances, the statement was made under voluntary conditions and was voluntarily made; (3) the methods used were not calculated to produce an untruthful confession and were not offensive to due process; (4) it clearly appeared the statement was freely and voluntarily made without compulsion or persuasion; and (5) the statement is admissible and the motion to suppress denied.

We compare these facts with the *Estrada* case where the court determined the defendant was not in custody for *Miranda* and Article 38.22 purposes. *See Estrada*, 313 S.W.3d at 294. In *Estrada*, the defendant was subjected to a five-hour interrogation after being driven to the station by an officer. *Id.* at 294–95. Officers also represented to the defendant he was the "central figure" in a murder investigation. *Id.* at 290. After accusing Estrada of lying, an officer told him the

12

probable cause statement and arrest warrant would say Estrada was at the victim's home. *Id.* at 291. Officers told Estrada several times he was free to leave, and Estrada told officers several times he wanted to go home. *Id.* at 295. At the conclusion of the interrogation, an officer told Estrada they would drive him home but would be issuing a warrant for his arrest. *Id.* at 292. Following the interrogation, they took him home and arrested him three hours later. *Id.* The facts in the present case are even less indicative of a custodial interrogation than those in *Estrada*, where the Court held the defendant was not in custody.

The record supports the trial court's findings of fact, and we give almost total deference to those findings. *See Amador*, 221 S.W.3d at 673. In reviewing the trial court's conclusions of law *de novo*, we consider the totality of the evidence in light of *Estrada*, and we conclude Burke was not in custody. *See id.*

## B. Voluntariness of Statement

A defendant's statement generally can be used in evidence against him if it appears it "was freely and voluntarily made without compulsion or persuasion[.]" Tex. Code of Crim. Proc. Ann. art. 38.21. Code of Criminal Procedure article 38.22 also governs the admissibility of an accused's oral or written statements and applies to both custodial and noncustodial statements. *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008) (citations omitted); *see also* Tex. Code Crim. Proc. Ann.

13

art. 38.22 § 6. A statement can be deemed involuntary and thus inadmissible under three different theories: (1) that it was made in violation of the Due Process Clause; (2) that it does not comply with the dictates of *Miranda*, as expanded in Article 38.22, sections 2 and 3; and (3) general involuntariness under Article 38.22, section 6 of the Texas Code of Criminal Procedure. *See Oursbourn*, 259 S.W.3d at 169; *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). A statement by an accused may be involuntary under the Due Process Clause only when there is police overreaching. *Oursbourn*, 259 S.W.3d at 169. Even if a statement "is not the product of a meaningful choice (for example, when it is made in response to hallucinations or to a private person's threat), it is nonetheless 'voluntary' within the meaning of the Due Process Clause absent some coercive police activity." *Id.* at 169–70. Similarly, a claim of involuntariness under *Miranda* requires some form of police overreaching or governmental coercion. *Id.* at 170–71; *see also Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). We evaluate whether the statement was voluntary by examining the totality of the circumstances. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (quoting *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995)).

Having already determined Burke's statement was not the product of a custodial interrogation, we now look to the totality of the circumstances to determine

14

whether the statement was made voluntarily.[4] *See id.* at 23. "The ultimate question is whether [the appellant's] will was overborne." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). When determining the voluntariness of a confession, police falsehoods are relevant. *See Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). The lie's effect "must be analyzed in the context of all the circumstances of the interrogation." *Mason v. State*, 116 S.W.3d 248, 257–58 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citations omitted). Courts have held that "misstating 'the strength of the prosecution's case' against a defendant interferes 'little, if at all,' with a defendant's 'free and deliberate choice' of whether to confess." *Id.* at 259 (quoting *Green*, 934 S.W.2d at 100) (police misleading defendant into believing there was an eyewitness when there was none did not render confession involuntary).

Burke contends that his will was "overborne by the threats made by officers[,]" and he was "scared, felt threatened, and believed that officers were going to lock the door and physically assault him." The trial court's factual findings dispute this. Although Burke points to his age, health, and eyesight as being factors, the record establishes: (1) that he went to the police station voluntarily; (2) that a detective read his statement verbatim before he signed it; (3) the interview's short

---

[4] The "totality of the circumstances" under which the statement was made include factors like length of detention, lack of sleep, and lack of food. *Nickerson v. State*, 312 S.W.3d 250, 258–59 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

15

duration; and (4) the absence of threats or violence. Accordingly, we find his arguments unpersuasive. Moreover, the police misleading Burke into believing they had DNA evidence did not render the confession involuntary. *See id.*

We give almost total deference to the trial court's factual findings and do not disturb them as they are supported by the record, which included the videotape of the interrogation admitted at the suppression hearing. *See Amador*, 221 S.W.3d at 673 (citations omitted). We therefore conclude Burke made his statement voluntarily and overrule his first issue.

### IV. Cross-examination

In his second issue, Burke claims that he could not present a meaningful defense, thereby implicating his Due Process rights, when the trial court barred cross-examination of the accuser and by doing so, violated the Confrontation Clause. Burke also argues on appeal that N.H.'s statements were admissible pursuant to Texas Rules of Evidence 607, 613, and 801(e). We review a trial court's limitation of cross-examination for an abuse of discretion. *See Klein v. State*, 273 S.W.3d 297, 304 (Tex. Crim. App. 2008).

In order to preserve error as to the exclusion of evidence, the proponent must object, obtain a ruling from the trial court or object to the trial court's refusal to rule, and make an offer of proof. *See* Tex. R. App. P. 33.1; Tex. R. Evid. 103(a)(1), (2);

16

*Williams v. State*, 937 S.W.2d 479, 489 (Tex. Crim. App. 1996). The proponent must also state the grounds for the desired ruling "with sufficient specificity to make the trial court aware of the complaint." *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (quoting Tex. R. App. P. 33.1). Here, Burke was required to do "everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application[.]" *See id.* (quoting *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002)).

Prior to trial, the defense filed a "Notice of Intent to Request Identity of All Sexual Assault Assailants Identified by Complaining Witness at Time of Cross Examination on State's Case in Chief" arguing generally that the fact the complaining witness had accused five people of sexual assault calls the "'complaining witness' credibility into question[ ] and opens the door to inquire into the reliability of the outcry made regarding the Defendant." However, the defense's filing did not assert that his Confrontation Clause or Due Process rights were implicated. The written filing likewise did not point to any specific evidentiary rules allowing for the admission of the evidence. At the outset of the proceedings, the trial court granted the State's motion in limine and ruled that the defense would not be allowed to ask questions about other alleged sexual assailants identified by the complaining witness, therefore having their identities was not necessary. When the

17

trial court announced its ruling, Burke did not make any argument beyond what he included in his written notice.[5]

The trial court held a hearing outside the jury's presence regarding the defense's request to conduct cross-examination regarding N.H.'s claims of sexual abuse by other individuals, including her mother, stepfather, stepbrother, and older sister, in addition to the fact that the parents' rights were terminated because of it. One of N.H.'s older sisters joined in the earlier outcry, and the defense argued in the trial court that it went to the witness's credibility. Defense counsel specifically noted that someone from the CASA office confirmed that N.H. made another similar outcry, which one of her older sisters joined.[6] During the hearing, the defense also described its review of a C.P.S. file which contained information concerning the nature of N.H.'s allegations against other family members, and the termination of her parents' rights. Burke argued that he had "probative evidence, admissible

---

[5] Although Burke points to the discussions during the hearing on his motion for continuance, we cannot see how these arguments preserve error of the trial court's subsequent trial rulings on the State's motion in limine and cross-examination. *See* Tex. R. App. P. 33.1. The trial court granted the continuance to give Burke the opportunity to investigate the other allegations. Burke did not argue for the admission of any particular evidence; rather, he made the general argument that the fact N.H. accused five other individuals of abuse called her credibility into question, and he should be allowed to investigate if she "pin[ned] this on somebody else rather than somebody she did not want to pin it on[.]"

[6] During the hearing, the defense did not call any witnesses or submit any evidence.

evidence . . . that established that there were at least five assailants[,]" and attributed the child's reticence to discuss her mother in her testimony to the fact that her mother was "involved in the very same horrible behavior." During trial, the defense made no argument that N.H.'s allegations against other individuals somehow negated Burke's admitted conduct or that she happened to confuse him with another potential assailant.

Burke contended "it was relevant and material for the jury to see that [N.H.]'s very selective and precise about what she remembers" which "reflects on her overall credibility[.]"[7] During the hearing, Burke did not raise the Confrontation Clause, or explain its implication, nor did counsel argue that the limitation of his cross-examination prevented him from putting on a meaningful defense. Likewise, counsel did not cite to any specific evidentiary rules or explain how any rules entitled him to cross-examine N.H. or have certain evidence admitted.[8]

---

[7] Despite Burke's assertion during the hearing that N.H.'s "overall credibility" was somehow negatively implicated, the defense acknowledged that the parents' rights were litigated and terminated, a sibling corroborated her account, and specifically stated that "it's not fake stuff. It's real." The fact that the child made meritorious allegations against others do not undermine her allegations against the defendant.

[8] It is difficult to determine from Burke's arguments in the trial court whether he was arguing he should be allowed to cross-examine N.H. only, call additional witnesses, or admit C.P.S. records.

In *Reyna v. State*, the State charged Reyna with indecency with a child. *See id.* at 174. Reyna sought to cross examine the victim about an earlier false allegation of sexual abuse she made against someone else. *See id.* The trial court excluded the evidence, then Reyna objected, made an offer of proof, and obtained a ruling. *See id.* at 175. In his offer of proof, Reyna contended the evidence should have been admitted for purposes of the victim's credibility. *See id.* at 179. On appeal, Reyna argued the exclusion of such evidence violated his right to confrontation. *See id.* at 175. The Texas Court of Criminal Appeals held Reyna waived review of the confrontation issue since his credibility argument could have referred to either the Rules of Evidence or the Confrontation Clause, and because he failed to clearly articulate his demand for admission, the judge never had an opportunity to specifically rule on the Confrontation Clause issue. *See id.* at 179.

Like the facts in *Reyna*, despite Burke's proffer, he failed to apprise the trial court that the Confrontation Clause or Due Process demanded admission of the evidence. *See id.*; *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (concluding appellant waived federal constitutional due process rights when he failed to lodge an objection at trial); *Wright v. State*, 374 S.W.3d 564, 575–76 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). Burke failed to cite to any specific evidentiary rules, case law, the Confrontation Clause, or his Due Process rights

20

during the hearing. His general assertions that the evidence was relevant, material, and reflected on N.H.'s "overall credibility" could have been under the evidentiary rules or the Confrontation Clause, and it would have been up to the judge to discern some basis for admitting the evidence. *See Reyna*, 168 S.W.3d. at 179. "When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error." *Id.* Because Burke "'did not clearly articulate' that the Confrontation Clause demanded admission of the evidence, the trial judge 'never had an opportunity to rule upon' this rationale." *See id.* (quoting *Clark v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994)); *see also* Tex. R. App. P. 33.1. We conclude that Burke did not preserve these complaints, because he failed to do "everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application." *See id.* at 177 (quoting *Martinez*, 91 S.W.3d at 335–36).

## V. Conclusion

Having overruled issues one and three and having determined Burke failed to preserve his cross-examination complaints for our review, we affirm the trial court's judgment.

AFFIRMED.

                                  _____

                                        CHARLES KREGER
                                           Justice

Submitted on November 20, 2019
Opinion Delivered January 22, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.